UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| The Estate of Genesis Martinez, | : | |
| Tony Martinez, Co-Administrator | : | |
| and Kelli Martinez, Co-Administrator, | : | |
| and Individually, | : | |
| Plaintiffs, | : | |
| | : | Case No. 3:06cv362 (JBA) |
| v. | : | |
| | : | |
| Martin E. Yavorcik, Esq. and | : | |
| Attorney Amy L. Higgins, | : | |
| Defendants. | : | |

### RULING ON DEFENDANTS' MOTIONS TO DISMISS [DOCS. ## 28, 30]

Plaintiffs Tony Martinez and Kelli Martinez, on behalf of
and as co-administrators of the Estate of their daughter, Genesis
Martinez, and individually, bring this action against defendant
Martin E. Yavorcik and Amy L. Higgins, claiming legal
malpractice, negligence, and breach of contract allegedly
resulting from defendants' failure to protect the legal interests
of plaintiffs and the Estate of Genesis Martinez. See Amended
Complaint [Doc. # 25]. Defendants, both Ohio attorneys, move to
dismiss the Amended Complaint pursuant to Fed. R. Civ. P.
12(b)(2) for lack of personal jurisdiction. Higgins Mot. to
Dismiss [Doc. # 28]; Yavorcik Mot. to Dismiss [Doc. # 30].
Alternatively, defendants move to dismiss plaintiffs' negligent
infliction of emotional distress claims (Counts 3, 6) pursuant to
Fed. R. Civ. P. 12(b)(6) as legally insufficient under Ohio law,
and defendant Higgins also moves to dismiss the breach of

contract claim brought against her (Count 5) as legally
insufficient under Connecticut law.  See id.

For the reasons that follow, defendants' motions to dismiss
will be granted pursuant to Rule 12(b)(2) for lack of personal
jurisdiction.

## I.   FACTUAL BACKGROUND

Plaintiffs' Amended Complaint details the circumstances
surrounding the tragic death of their daughter, Genesis Martinez,
in a house fire in their former apartment building in Hartford,
Connecticut, and their efforts to obtain legal representation for
the purpose of investigating and ultimately filing a claim
against their former landlord for negligence resulting in the
death of their daughter.

Plaintiffs allege that sometime in September 2003, defendant
Yavorcik made representations to them that he would be able to
and would pursue a wrongful death case on their behalf from Ohio,
and encouraged plaintiffs to change their residence and move to
Ohio.  Am. Compl. ¶ 9.  Plaintiffs allege that Yavorcik stated he
was capable of pursuing such a case from Ohio, would file "an
appropriate motion with the Connecticut Courts in order to seek
permission to practice law before the courts in the State of
Connecticut," and would "file appropriate applications with the
Probate Court in order to reopen the estate of Genesis Martinez."
Id. ¶¶ 10-11, 35, 41.  Plaintiffs also allege that on October 10,

2003, they signed a written retainer agreement with Yavorcik
pursuant to which he would "pursue" the wrongful death case in
Connecticut and after which he and defendant Higgins, also an
Ohio attorney, did pursue the wrongful death case in Connecticut.
Id. ¶¶ 12, 39-40.  Plaintiffs further allege that pursuant to
defendants' representation of plaintiffs, defendants "made
various contacts in the State of Connecticut in their
investigation and prosecution of the wrongful death action in the
State of Connecticut," id. ¶ 13, including: contacts and requests
for information from various State of Connecticut and City of
Hartford departments and agencies, Connecticut attorneys,
parties, and witnesses; phone calls and other communications
with, including the payment of money to, the State of Connecticut
Office of the Chief Medical Examiner for information and
documentation; contacts with the City of Hartford Fire
Department; and correspondence between defendant Higgins and
Connecticut attorney James D. Bartolini in which Higgins sought
assistance in investigating the plaintiffs' potential claim.  Id.
¶¶ 14-21.

    In their affidavits, defendants purport to clarify their
alleged contacts with Connecticut.  Defendant Yavorcik attests
that he is an attorney licensed to practice in Ohio, that his
practice is confined to the state and federal courts in Ohio, and
that he is not and never has been licensed to practice law in

3

Connecticut.  Yavorcik Aff. [Doc. # 30-4] ¶ 2-4.  Yavorcik
further states that when he met with plaintiffs in
September/October 2003 to discuss "their potential claims," he
"advised [them] that any action against their landlord would have
to be brought in Connecticut [and] that [he] was not licensed to
practice law in Connecticut and . . . could not bring an action
on behalf of [them] in a Connecticut court.  However [he] did
agree to conduct an investigation into [their] potential claims
to determine if [they] had a viable cause of action against their
landlord.  [He] also advised the plaintiffs that if a claim
against their landlord was going to be pursued, [he] would have
to refer the case to Connecticut counsel, and Connecticut counsel
would pursue the claim in Connecticut."  Id. ¶ 6.  Yavorcik also
describes the contingency fee agreements entered into between
himself and plaintiffs and his various contacts with Connecticut
agencies and offices, as well as with the father of plaintiff
Kelli Martinez (a Colorado resident), about the case.  Id. ¶¶ 7-
13.  Yavorcik states that he "never contacted any witnesses with
regard to the investigation of the plaintiffs' possible wrongful
death claim," but his file contains copies of statements from
potential witnesses.  Id. ¶ 14.  Further, Yavorcik testifies that
he never contacted potential defendants in Connecticut, he has
never been to Connecticut, he has never advertised in Connecticut
publications or in national publications which are sold in

4

Connecticut, has never initiated a business relationship in Connecticut, has never sought or otherwise solicited business in Connecticut, has never executed any contract in Connecticut, and has "never conducted or transacted business, in any manner, in the state of Connecticut." Id. ¶¶ 16-23.

Attorney Higgins similarly attests that she is licensed to practice law in Ohio state courts only and has never been licensed to practice law in Connecticut or appeared in any Connecticut state or federal court. Higgins Aff. [Doc. # 28-3] ¶¶ 2-8. Higgins states that she never commenced any litigation in Connecticut on behalf of plaintiffs and never met with anyone from the Martinez family or a representative thereof in Connecticut, and that the only contact she recalls having with Connecticut on behalf of plaintiffs "was a February 19, 2004 dated letter to Attorney James Bartolini inquiring as to whether he would be interested in investigating any claim on behalf of the Martinez family." Id. ¶¶ 13-15. Higgins does not recall any telephone conversations with Attorney Bartolini or anyone in the State of Connecticut in an effort to investigate any claim on behalf of plaintiffs and "[a]side from the one letter addressed to Attorney James Bartolini, [she] do[es] not recall any other contacts with Connecticut in relation to investigating any claim on behalf of the Martinez family." Id. ¶¶ 17-18. Higgins testifies that she never traveled to Connecticut in relation to

investigating any claim on behalf of plaintiffs, she has never performed any legal services in Connecticut nor derived any income from legal services performed in Connecticut nor transacted any business in Connecticut; she further states that she has never solicited any business in Connecticut, she has not had systematic contacts with Connecticut, and she has not advertised or marketed in Connecticut.  Id. ¶¶ 12, 20-30.

Plaintiffs dispute the allegations made in defendants' affidavits.  Specifically, Tony Martinez attests that when he and his wife, Kelli Martinez, first met with Attorney Yavorcik in September 2003, Yavorcik "made clear and distinct representations to [them] that he could be hired as [their] attorney for [their] daughter's wrongful death case [and that they] could hire him as [their] attorney and that he could pursue it from the state of Ohio."  Martinez Aff. [Doc. # 36, Ex. A] ¶ 6.  Mr. Martinez further states that Yavorcik never told plaintiffs they would need to hire a Connecticut attorney and informed plaintiffs that he would take trips to Connecticut whenever necessary to "perform the proper investigations and to attend hearings with the Courts [and] mentioned that he could file documents with the courts in Connecticut so that he can practice there if the case ever got to a trial."  Id. ¶ 7.  Mr. Martinez states that "[a]t the conclusion of said meeting, it was [his] complete understanding that Attorney Yavorcik and [he] had signed a contract for

6

[Yavorcik] to represent [Mr. Martinez] and the estate of [his] late daughter for her wrongful death." Id. ¶ 8.  The contingency agreements entered into between plaintiffs and Attorney Yavorcik do not limit the scope of representation to investigation, but rather state that Attorney Yavorcik's representation will be "in connection with any and all claims which [plaintiff] may have arising out of [his/her] injury which occurred on December 6th, 2002."  Contingent Fee Contracts [Docs. ## 30-5, 36, Ex. C].

Mr. Martinez further attests that Yavorcik never told them that he was not licensed to practice law in Connecticut or that he would have to refer plaintiffs' case to a Connecticut attorney.  Id. ¶ 9.  Donald Crawford, Kelli Martinez's father, attests that Yavorcik told him the same thing.  Crawford Aff. [Doc. # 36, Ex. B] ¶¶ 7, 12.  Messrs. Martinez and Crawford also describe the contacts they believe Yavorcik had with Connecticut and elsewhere around the country in investigating the potential wrongful death claim, and state that Yavorcik asked plaintiffs and their family members to provide him with statements concerning the fire and the conditions of the apartment where the fire occurred.  Mr. Martinez also states that in January 2004 Yavorcik informed plaintiffs that he was going to obtain the assistance of another attorney, Attorney Higgins, an associate at the law firm of Clair M. Carlin, LLC, who would participate in the investigation.  Martinez Aff. ¶ 15-16; Crawford Aff. ¶ 12.

7

Plaintiffs have also submitted letters and other correspondence between Attorney Yavorcik and the Hartford Fire Department, and between Attorney Higgins and James D. Bartolini, Esq., a Connecticut attorney.  <u>See</u> [Doc. # 36, Exs. D, F, G].

## II.  DISCUSSION

### A.  Standard

"When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendants."  <u>Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez</u>, 171 F.3d 779, 784 (2d Cir. 1999).  "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction."[1]  <u>Metro. Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 566 (2d Cir. 1996).  Thus, plaintiffs must make a <u>prima facie</u> showing, through affidavits and other evidence, that the conduct of each of the defendants was sufficient to establish this Court's personal jurisdiction.  <u>See</u> <u>Marine Midland Bank, N.A. v. Miller</u>, 664 F.2d 899, 904 (2d Cir. 1981) ("If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials.").  However, as with any

---

[1] At the time defendants' motions were filed, discovery had only just commenced.

motion to dismiss, "[w]e construe the pleadings and affidavits in the light most favorable to [the plaintiffs], resolving all doubts in [their] favor." DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001) (internal citations omitted).

"[I]n resolving questions of personal jurisdiction in a diversity action, a district court must conduct a two-part inquiry.  First, it must determine whether the plaintiff has shown that the defendant is amenable to service of process under the forum state's laws; and second, it must assess whether the Court's assertion of jurisdiction under these laws comports with the requirements of due process." Metro. Life. Ins., 84 F.3d at 567.  The applicable long-arm statute is Conn. Gen. Stat. § 52-59b(a)(1), which provides that "a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent: (1) Transacts any business within the state."

"If jurisdiction is appropriate under [this statute], the [C]ourt must then decide whether exercise of jurisdiction comports with due process." Savin v. Ranier, 898 F.2d 304, 306 (2d Cir. 1990) (internal citation omitted).  The due process analysis has two steps: minimum contacts and reasonableness.  The "minimum contacts" analysis, testing whether a defendant's contacts with a forum are such that the defendant "should reasonably anticipate being haled into court there," see World

Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980),

differentiates between specific and general jurisdiction.

"Specific jurisdiction exists where the suit arises from the

defendant's contacts with the forum. . . . Unlike general

jurisdiction, where the plaintiff has a more stringent burden of

proving 'continuous and systematic contacts' with the forum, no

such burden is required in cases of specific jurisdiction."

Broadcast Marketing Int'l, Ltd. v. Prosource Sales & Marketing,

Inc., 345 F. Supp. 2d 1053, 1060 n.7 (D. Conn. 2004).  The

"reasonableness" analysis considers:

> 1) the burden that the exercise of jurisdiction will
> impose on the defendant; 2) the interests of the forum
> state in adjudicating the case; 3) the plaintiff's
> interest in obtaining convenient and effective relief;
> 4) the interstate judicial system's interest in
> obtaining the most efficient resolution of the
> controversy; and 5) the shared interest of the states
> in furthering substantive social policies.

Id. at 1063 (citing Metro. Life Ins., 84 F.3d at 568; Asahi Metal

Indus. Co. v. Super. Ct. Cal., 480 U.S. 102, 113-14 (1987)).

**B.    Long-Arm Jurisdiction**

The long-arm statute which plaintiffs claim is applicable

here is Conn. Gen. Stat. § 52-59b(a)(1), which provides that "a

court may exercise personal jurisdiction over any nonresident

individual . . . who in person or through an agent: (1) Transacts

any business within the state."  The General Statutes do not

define the phrase "transacts any business," but the Connecticut

Supreme Court has interpreted it "to embrace a single purposeful

10

business transaction." <u>Zartolas v. Nisenfeld</u>, 184 Conn. 471, 474 (1981).  The <u>Zartolas</u> court held that "[i]n determining whether the plaintiffs' cause of action arose from the defendants' transaction of business within this state we do not resort to a rigid formula.  Rather, we balance considerations of public policy, common sense, and the chronology and geography of relevant factors." <u>Id</u>. at 477.

In <u>Zartolas</u>, the court held that non-resident defendants' execution of a warranty deed pursuant to a single sale of real property located in Connecticut was "purposeful Connecticut related activity" sufficient "to locate this transaction of theirs within this state despite the absence of allegations that the sale of closing occurred here; or that they or anyone acting for them solicited the plaintiffs' purchase or entered this state to deal with the plaintiffs." <u>Id</u>. at 475-76.  However, <u>Zartolas</u> based this finding on the principle that "[b]y owning land in Connecticut the defendants invoked the benefits and protection of Connecticut's laws of real property [and] [i]f the defendants breached their warranties, the breach occurred here because of acts committed here." <u>Id</u>.  By contrast, courts have in other cases found that minimal contacts with Connecticut by a non-resident defendant, such as mail, phone, and fax communications, occasional visits, and even <u>pro hac vice</u> admission to Connecticut courts will not constitute transaction of business within the

state.[2]

Even resolving all disputes in the affidavits in favor of
plaintiffs, which the Court must do at this stage, plaintiffs
have not made a _prima_ _facie_ showing that defendants were
transacting business in this state such that this Court has
personal jurisdiction over them.

---

[2] See, e.g., Rosenblit v. Danaher, 206 Conn. 125, 140-41
(1988) (no personal jurisdiction over Massachusetts attorney
hired by two Connecticut residents and one Massachusetts resident
to pursue lawsuit that "arose out of a series of contacts by the
plaintiffs with Massachusetts residents in the main [and] out of
the plaintiffs' efforts to rehabilitate real property situated in
Massachusetts [and] also involved a number of the potential
witnesses from Massachusetts," notwithstanding that a key player
in the dispute was a Connecticut resident, some witnesses resided
in Connecticut, and defendant was present in Connecticut on one
occasion); Fielder v. First City Nat'l Bank of Houston, 807 F.2d
315, 317 (2d Cir. 1986) (personal jurisdiction under New York
long-arm statute, which is virtually identical to Connecticut's,
not established where defendants made two or three telephone
calls and one mailing to Connecticut); Rasmussen v. Scinto,
06CV99 (MRK), 2006 WL 2567862, *3 (D. Conn. Sept. 5, 2006) ("The
transmission of communications between an out-of-state defendant
and a [party] within the jurisdiction does not, by itself,
constitute the transaction of business in the forum state.");
Irwin v. Mahnke, 05cv976 (AHN), 2006 WL 691993, at * 3-4 (D.
Conn. Mar. 16, 2006) (no transaction of business in Connecticut
even though defendant was admitted pro hac vice in District of
Connecticut); Baker v. Abrams, 929 F. Supp. 617, 620 (D. Conn.
1996) (defendant Maine attorneys did not transact business in
Connecticut where their firm was not involved in any contract
with the plaintiff in Connecticut, agreement of one defendant
with a Connecticut attorney was made by mail, and there was no
indication that any of the defendants solicited business in
Connecticut); Greene v. Sha-Na-Na, 637 F. Supp. 591, 596 (D.
Conn. 1986) ("[T]he individual defendants' October 15, 1984
telephone call, October 16, 1984 telegram, and October 22, 1984
letter, all directed to the plaintiff in Connecticut, are
insufficient to constitute the transacting of business in
Connecticut.").

Attorney Yavorcik

According to plaintiffs, Attorney Yavorcik told them that he would represent them in investigating and litigating the wrongful death claim, which he acknowledged would need to be filed in Connecticut, and that he would take trips and investigate in Connecticut as necessary and would obtain permission to appear before Connecticut courts. Additionally, plaintiffs detail that Attorney Yavorcik had communications via telephone and mail with individuals at both the Hartford Fire Department and the Medical Examiners Office and obtained documentation from those offices. However, plaintiffs do not dispute Yavorcik's statements that the attorney-client relationship was commenced, and the retainer agreements signed, in Ohio; that at the time, plaintiffs and Yavorcik were Ohio residents; and that Yavorcik never traveled to Connecticut for the case (indeed, he has never been to Connecticut) and never filed any action on behalf of plaintiffs here.[3]

---

[3] Even reading the dispute regarding Attorney Yavorcik's representations to plaintiffs about the scope of his representation in the light most favorable to plaintiffs, as demonstrating promises that he would obtain permission to litigate in Connecticut, would file plaintiffs' claim here, would appear before Connecticut courts as necessary, and would file papers with the Connecticut Probate Court to reopen the estate of Genesis Martinez, such actions were indisputably never taken, and promises as to future conduct cannot establish personal jurisdiction. Cf. Home Gambling Network, Inc. v. Betinternet.com, PLC, 05cv610 (KJD) (LRL), 2006 WL 1795554, at *5 (D. Nev. June 26, 2006) ("Jurisdiction is not based on the likelihood of some future contact with the forum, but 'the

13

These facts, taken together, do not establish that Yavorcik purposefully availed himself of the benefits and protections of the State of Connecticut by transacting business here.  The contacts he had with Connecticut were minimal and were related to his ongoing attorney-client relationship with then-Ohio residents pursuant to retainer agreements executed in Ohio.  Attorney Yavorcik conducted his work related to the potential wrongful death claim in Ohio, and in addition to his few phone and mail contacts with Connecticut, he also communicated with Mr. Crawford in Colorado and received statements from plaintiffs' family members from across the country, not just Connecticut.  Further, Yavorcik's undisputed testimony is that he never advertised in or solicited any business from Connecticut, or entered into any business relationship here.  Further, to the extent Yavorcik committed the wrongs plaintiffs claim, those wrongs did not arise out of any business transacted in Connecticut – rather, they arose out of Yavorcik's alleged failure to properly investigate and prosecute the wrongful death claim, which mistakes and omissions he necessarily made in Ohio.[4]  Indeed, the essence of plaintiffs' claims is that both defendants <u>did not do</u> the things

---

defendant's conduct and connection with the forum state . . . such that he should reasonably anticipate being haled into court there.'") (citing <u>Worldwide</u>, 444 U.S. at 297).

[4] For this reason, Conn. Gen. Stat. § 52-59b(a)(2), providing for long-arm jurisdiction over a defendant who commits tortious conduct within the state, would also be inapplicable.

they had promised to do in Connecticut.  This case thus appears to the Court to be more like those discussed <u>supra</u> in note 2, where the Connecticut conduct was ancillary to the transaction of business in a foreign state, and less like <u>Zartolas</u>, where the cause of action related to the signing of a warranty deed for property in Connecticut.

<u>Attorney Higgins</u>

The only contact plaintiffs claim Attorney Higgins had with Connecticut was her written exchange with Attorney Bartolini regarding his potential representation of plaintiffs in their wrongful death claim.  Following the analysis set out above with respect to Attorney Yavorcik, and because Attorney Higgins had even less contact with Connecticut than Yavorcik and plaintiffs do not claim Higgins ever even told them that she would obtain permission to file and litigate their case here, Connecticut's long-arm statute also does not apply to Attorney Higgins to provide personal jurisdiction over her in this action.

<u>Conclusion</u>

The Court appreciates plaintiffs' argument that their potential wrongful death claim involves Connecticut parties and witnesses and events occurring solely in Connecticut, and would have to be filed and litigated here.  However, such facts do not confer personal jurisdiction over these defendants for a malpractice and negligence action arising out of attorney-client

relationships entered into and attorney investigation undertaken in Ohio, with limited telephonic and written communications between defendants in Ohio and individuals in Connecticut.

### C.    Due Process

Even if plaintiffs were able make a prima facie showing of personal jurisdiction under Connecticut's long-arm statute, it would be inconsistent with the requirements of due process as set forth in International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), and its progeny to exercise personal jurisdiction over defendants in this District.  "Minimum contacts" are established when a defendant "purposefully avail[s] himself of the privileges and benefits" of the forum state.  Hanson v. Henckla, 357 U.S. 235, 253 (1958).  The purposeful availment requirement protects defendants from being haled into court based on "random, fortuitous or attenuated contacts," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985), and also ensures that defendants have "fair warning" if their conduct could subject them to suit in the forum state, Bensmiller v. E.I. DuPont de Nermours & Co., 47 F.3d 79, 85 (2d Cir. 1995).  As noted above, the minimum contacts component of the due process analysis can be established by demonstrating specific jurisdiction, which exists where the suit arises from a defendant's contacts with the forum, or general jurisdiction, which exists where a defendant has continuous and systematic contacts with the forum.

It is clear that neither specific nor general jurisdiction
exists over either defendant in this case.  As detailed above,
plaintiffs' claims do not arise out of any contacts of defendants
with Connecticut, as the claims relate to alleged omissions
(e.g., failing to timely file wrongful death suit), which could
only have occurred in Ohio, where the defendant attorneys were
practicing.  Further, defendants' minimal contacts with
Connecticut constitute neither systematic nor continuous conduct
in Connecticut sufficient for general jurisdiction, as they do
not even rise to the level of transacting business here.
See also, e.g., Harris v. Wells, 832 F. Supp. 31, 35 (D. Conn.
1993) ("some telephone conversations" between non-resident
defendant and Connecticut plaintiff did not constitute minimum
contacts); Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583,
587 (2d Cir. 1965) (negotiation of contracts by telephone and
mail did not confer personal jurisdiction).  Thus, it cannot be
said that defendants purposefully availed themselves of the
privileges and/or benefits of Connecticut, such that they had
fair warning that they could be haled into Court here.

Moreover, the reasonableness analysis also weighs against
exercising personal jurisdiction over defendants.  As noted
above, this analysis considers the following factors:  1) the
burden that the exercise of jurisdiction will impose on the
defendant; 2) the interests of the forum state in adjudicating

17

the case; 3) the plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and 5) the shared interest of the states in furthering substantive social policies.  First, the burden of defendants in defending this action in Connecticut, where they are both Ohio residents, would be substantial.  Additionally, while Mr. Martinez is now a Connecticut resident, Mrs. Martinez resides in Colorado, and other witnesses (including Mr. Crawford) are also located in Colorado and in other foreign states, and thus the convenience of all parties does not necessarily favor Connecticut.  Further, the interest of Ohio in adjudicating this attorney malpractice suit strongly outweighs any interest Connecticut may have, as the case concerns the alleged malpractice of two Ohio-licensed attorneys pursuant to representation agreements entered into Ohio, with then-Ohio residents.  At the time the action was filed, only Mr. Martinez was a Connecticut resident, and thus this state has only a very limited interest in litigating this case to protect one of its citizens from the conduct of non-resident attorneys.

Thus, even if Connecticut's long-arm statute were satisfied, plaintiffs have not made a prima facie showing that exercise of personal jurisdiction over these defendants would comport with due process.

### D.   Transfer to Ohio

The parties discussed at the May 26, 2006 pre-filing conference the possibility of transferring this case to Ohio if defendants' motions to dismiss for lack of personal jurisdiction in this District were successful.  The Court finds Ohio to be a more convenient forum for this dispute as the alleged attorney-client relationships were entered into in Ohio, Mr. Martinez was a resident of Ohio at the time of the allegedly tortious conduct by defendants (it is not clear when Kelli Martinez moved from Ohio to Colorado), defendants are both Ohio residents, and most, if not all, of the investigatory work undertaken by defendants appears to have occurred in Ohio.  As neither plaintiff is currently an Ohio resident, and both defendants are Youngstown, Ohio residents, the Court will transfer this action to the Northern District of Ohio, which encompasses Youngstown.

## IV. CONCLUSION

For the foregoing reasons, defendants' motions to dismiss [Docs. ## 28, 30] are GRANTED.  In the interests of justice, the Clerk is directed to TRANSFER this case to the District Court for the Northern District of Ohio.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.


**Dated at New Haven, Connecticut this 12th day of October, 2006.**

19